IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL D. HART and <br> PATTY S. HART, <br>       Plaintiffs, <br> v. <br> WELLS FARGO HOME MORTGAGE, <br> INC., et. al., <br>       Defendants. | No. 2:16-CV-04171-NKL |

**ORDER**

*Pro se* Plaintiffs Michael and Patty Hart bring this suit concerning their mortgage loan against Defendants Wells Fargo Home Mortgage, Inc., Wells Fargo & Company, and Wells Fargo Bank, N.A. The Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Doc. 12. The motion is granted.

**I.    Background[1]**

The Harts obtained a mortgage loan from Wells Fargo[2] using their residence as collateral. Wells Fargo was not only the loan originator, but the loan servicer. Starting around 2007, the Harts began experiencing financial difficulties. Both of the Harts lost their jobs in 2010 and Mr. Hart was incarcerated from 2012 to May 2014. Their reduced income, plus living expenses

---

[1] The facts alleged in the Harts' Complaint, Doc. 1-2, are taken as true for purposes of deciding the motion to dismiss for failure to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Under the "Parties" subheading of Complaint, the Harts allege that Wells Fargo Home Mortgage, Inc. and Wells Fargo & Company are a parent company or companies of Wells Fargo Bank, N.A. They allege that Wells Fargo Bank N.A. is a national banking association, with offices in Cole County, Missouri, that solicits applications for and makes mortgage loans. Elsewhere in the Complaint, the Harts refer to the actions of "Lender," without specifying which Defendant they mean. Because any distinction between the Defendants does not affect the resolution of the motion to dismiss, the Court will simply refer to "Wells Fargo."

and the high interest rate on their loan, caused the Harts "extreme difficulty" in making their mortgage payments. Doc. 1-2, p. 3 of 14, ¶ 13. The Harts also found that, "[s]ince [their] home [had] suffered a severe loss in value from the time of its purchase, attempts at refinancing through equity … proved futile." *Id.* at ¶ 14. Wells Fargo "approved a loan modification sometime in 2014 for" the Harts. *Id.*, p. 9 of 14, ¶ 49. That modification appears to have been a temporary one.

In early 2015, the Harts "sent a letter of hardship and their complete financial file to" Wells Fargo. *Id.*, p. 3 of 14, ¶ 15. Wells Fargo mailed the Harts letters, indicating it was investigating the Harts' situation and promising a prompt response. Communications between the Harts and Wells Fargo regarding the status of the Harts' modification request continued for months. The Harts accrued escalating late fees and other penalties, their credit was affected, and it was "impossible for them to obtain financial products and loans from other institutions to assist" them "in making the full payments on their loan[.]" *Id.* at ¶ 19. Wells Fargo "failed to grant a permanent modification[.]" *Id.*, p. 4 of 14, ¶ 21. The loan is now in default and the property is at risk of foreclosure. *Id.*, p. 5 of 14, ¶ 27.

The Harts' six-count complaint alleges claims for fraud, deceit, negligent misrepresentation, negligence, violation of unfair competition laws, declaratory judgment, reformation, and breach of the implied covenant of good faith and fair dealing.

## II. Discussion

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though this pleading standard does not require "detailed factual allegations," the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly,* l550 U.S. 544,

2

556 (2007). A pleading that offers labels, conclusions, a formulaic recitation of elements, or naked assertions devoid of factual enhancement does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only well-pleaded facts are accepted as true, while "[t]hreadbare recitals of the elements of a cause of action" and legal conclusions are not. *Id.* "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 679. *See also Ashcroft*, 556 U.S. at 678 (a court need not "accept as true legal conclusions, even those stated as though they are factual allegations").

When reviewing a *pro se* complaint, the Court construes it liberally and draws all reasonable inferences from the facts in favor of the plaintiff. *Topchian v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

### A. Count I: Fraud, Deceit, and Negligent Misrepresentation

#### 1. Fraud

To survive a motion to dismiss a claim of fraud, a plaintiff must plead sufficient facts to establish: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010).

Further, Fed. R. Civ. P. 9(b) requires a party to "state with particularity the circumstances constituting fraud." Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). The plaintiff must plead "such matters as the time, place and contents of false

3

representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).

In Count I, the Harts allege that Wells Fargo "at various times" "knowingly misrepresented" "the nature and terms of the loan; … that the loan was a good financial decision for [the Harts]; … the modification process of the loan; and the grossly inflated value of [their home] that [Wells Fargo] used to justify the loan." Doc. 1-2, p. 4 of 14, ¶ 24. They further allege that Wells Fargo knowingly or fraudulently induced them to take out the loan, knowing they "were unlikely to ever be able to pay [it] off." *Id.,* at ¶ 25. Wells Fargo also falsely represented that a loan modification would "become considered, granted, and/or permanent if [the Harts] paid the mortgage amount, on time and in full[,]" and such representations "directly contradicted Defendants' own policies and procedures." *Id.,* at ¶ 26. Also, Wells Fargo represented to the Harts that they were "still on a trial modification course, when in fact," their "payments were still be recorded as insufficient." *Id.*

The Harts do not plead sufficient facts to establish the elements of a fraud claim. For example, they fail to allege the terms of the loan they are referring to and when it was taken out, or the terms of the temporary modification they obtained. They do not allege the time, place and contents of the allegedly false representations, the identity of the person making the misrepresentations, and what they gave up as a result of each such representation. They do not allege what Wells Fargo' policies and procedures were, nor indicate how the alleged

4

misrepresentation violated them.

Thus, the Harts' allegations that Defendants' conduct was fraudulent are merely conclusory, and they fail to state a claim for fraudulent misrepresentation.[3]

### 2. Negligent misrepresentation

A claim for negligent misrepresentation requires a plaintiff to plead facts sufficient to establish that: "(1) that the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing,* 322 S.W.3d at 134.

The Complaint does not include any facts reflecting who the speaker was or that the speaker supplied information in the course of his business, the first element of the claim. Nor does the Complaint include any facts about the speaker's failure to exercise reasonable care, the second element. Furthermore, the Complaint does not allege facts showing the Harts suffered a pecuniary loss due to their reliance on the information, the fifth element. To the contrary, the Harts allege their house suffered a severe loss in value from the time of its purchase, that attempts to refinance it proved futile, and that they lacked income with which to pay their loan

---

[3] The heading of Count I includes "deceit." Missouri case law has long treated "fraudulent misrepresentation" and "deceit" interchangeably, and as involving the same elements. *See, e.g., People's Nat'l Bank v. Cent. Trust Co.*, 179 Mo. 648, 652 (1904) ("This is a suit for damages, founded on alleged fraudulent misrepresentations. It is what is commonly called an action for deceit.") *See also Ellenburg v. Edward K. Love Realty Co.*, 332 Mo. 766, 771 (1933) ("In actions at law to recover damages for fraud and deceit, it must be shown that false representations were made, with knowledge of their falsity and with a fraudulent intent.") Therefore, the Harts' claim for deceit fails for the same reasons as the claim for fraudulent misrepresentation.

5

due to job loss and living expenses, as well as a high interest rate. Thus, the Harts fail to provide sufficient facts to support a claim for negligent misrepresentation.

Accordingly, Count I is dismissed for failure to state a claim.

**B.     Count II: Negligence**

A claim for negligence requires proof of: (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff. *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 400 (Mo. App. 2015).

The Harts claim that Wells Fargo "owed a duty of care to avoid foreseeable injury to Plaintiffs' person or property," and "a duty to competently and reasonably work with Plaintiffs in their efforts to modify their loan," Doc. 1-2, p. 5 of 14, at ¶ 33. They cite no Missouri law suggesting that a lender, as an incident of the relationship created by the execution of a promissory note, has these duties, and the Court has located none. Under Missouri law, the contractual relationship between a lender and borrower does not alone establish a tort duty on the part of the lender, *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 900 (8th Cir. 2014), nor has Missouri ever recognized a mere breach of contract as providing a basis for tort liability, *Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 814 (Mo. App. W.D. 1996). Furthermore, a lender and borrower ordinarily have a non-fiduciary, arm's length relationship that does not give rise to a duty that would support a negligence claim. *Wivell*, 773 F.3d at 900; *see also Centerre Bank of Kansas City, N.A. v. Distributors, Inc.*, 705 S.W.2d 42, 53 (Mo. App. 1985) ("There is no confidential or fiduciary relationship between a bank and a customer borrowing funds.").

Thus, the pleadings are naked assertions without sufficient factual or legal support. Count II is dismissed for failure to state a claim.

### C. Count III: Violation of Unfair Competition Laws

In Count III, the Harts allege Wells Fargo' acts were "unlawful business practices in that they violate the state and federal law, including but not limited to violations of RESPA and state of Missouri statutes alleged in this Complaint." *Id.*, p. 6 of 14, ¶ 36. Later in the same count, the allege that Defendants failed to perform their "responsibilities under HAMP[.]" *Id.* at ¶ 37.

RESPA, or the Real Estate Settlement Procedures Act, is a federal, consumer protection law that imposes certain obligations and prohibitions on loan servicers with respect to the loans they service. More specifically, it applies to "federally related mortgage loans," addressing disclosures, notices of loan transfer, treatment of loan payments during transfer, duty to respond to borrower inquiries or "qualified written requests," and administration of accounts, 12 U.S.C. § 2605; prohibiting kickbacks and unearned fees, § 2607; and prohibiting a seller from requiring title insurance to be purchased from a particular title company, § 2608.

The Harts fail to allege that their loan was a federally related mortgage loan, which is a fatal omission. *See Hallquist v. United Home Loans, Inc.,* 2012 WL 1980656, at *5 (W.D. Mo. June 1, 2012) (citing *Gardner v. First American Title Ins. Co.,* 294 F.3d 991, 993 (8th Cir. 2002)), *aff'd* 715 F.3d 1040 (8th Cir. 2013). Nor do they allege sufficient factual allegations to provide the grounds on which their RESPA claim rests, let alone which portion of RESPA they claim Wells Fargo violated. The Harts' allegations include, for example, that Wells Fargo engaged in a "pattern and practice of failing to perform loan servicing functions"; "fail[ed] to properly supervise…agents and employees"; "fail[ed] to communicate accurately or consistently with Plaintiffs about the status of their loan modification application"; "misrepresented and omitted material facts" so as to cause the Harts to "enter into a sham process" for modification or refinancing; and "unfairly" denied the Harts a permanent loan modification. Doc. 1-2, pp. 6-7 at

7

14, ¶¶ 37-38 and 40. The allegations are merely conclusory. Count III fails to state a claim under RESPA.

The vast majority of courts, including the district courts in Eighth Circuit, have held that HAMP, or the federal government's Home Affordable Modification Program, does not provide a private cause of action for borrowers. *See Reitz v. Nationstar Mortg.,* 954 F.Supp.2d 8070, 881 (E.D. Mo. 2013) (and cases cited therein). The Court sees no reason to reach a different conclusion, especially in the absence of any briefing to the contrary. Count III fails to state a claim under HAMP.

Finally, nowhere in Count III, or elsewhere in the Complaint, do the Harts cite any Missouri statutes, let alone identify factual allegations that apply to such unspecified statutes, in connection with Count III. The naked assertion of violation of unspecified state statutes is insufficient to state a claim under Missouri law.

Count III is therefore dismissed in its entirety.

### D. Count IV: Declaratory relief

Although Count IV is labeled as a claim for injunctive relief, it is a claim for declaratory relief. The Harts allege Wells Fargo thwarted their attempts to obtain a permanent loan modification because Wells Fargo would not have a meaningful discussion about modification with them. They then request a declaration that they did not breach their obligations to Wells Fargo and that Wells Fargo "wrongfully placed" them in default. Doc. 1-2, p. 8 of 14, at ¶ 46.

A claim for declaratory relief requires a plaintiff to plead and prove that a justiciable controversy exists and that the plaintiff has no adequate remedy at law. *Midwest Freedom Coal, LLC v. Koster,* 398 S.W.3d 23, 25 (Mo. App. 2013). *See also State ex rel. Am. Eagle Waste Indus. v. St. Louis County,* 272 S.W.3d 336, 340 (Mo. App. 2008) (to state a claim for

8

declaratory judgment, the pleading must "invoke substantive legal principles which, if proved, entitle the petitioner to declaratory relief"). As discussed throughout this Order, the other five Counts—I, II, III, V, and VI—consist of naked assertions without sufficient factual or legal support, and will be dismissed. The Harts' allegation in Count IV, that Wells Fargo would not have a meaningful discussion with them about modification, alleges no factual or legal support. Inasmuch as the other Counts will be dismissed, permitting Count IV to survive would serve no useful purpose.

Count IV is therefore dismissed.

### E. County V: Reformation

Reformation is an extraordinary equitable remedy. *US Bank, N.A. v. Smith*, 470 S.W.3d 17, 25 (Mo. App. 2015) (quoting *King v. Riley,* 498 S.W.2d 564, 566 (Mo. 1973)). In Missouri, the "'accepted rule'" is that a court "'will reform a written instrument[]s so as to make [it] speak the real agreements of the parties in cases in which by mistake or misprision of the scrivener the writing failed to do so[.]'" *Id.* Reformation is "available upon a showing that, due to either fraud[] or mutual mistake, the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intention of the parties." *Id.* (internal quotations and citations omitted). "In seeking reformation, it must be established that a mistake occurred that caused the contract language to differ from what the parties intended in their agreement." *Id.* (internal quotations and citations omitted). Thus, the party seeking reformation must show, by clear, cogent and convincing evidence, that: 1) a preexisting agreement existed between the parties, having terms in accordance with the proposed reformation; 2) the mistake; and 3) the mutuality of the mistake. *Id.* (internal quotations and citations omitted).

The Harts allege they are entitled to reformation because Wells Fargo "[was] able to

9

convince [them] that adequate value existed in [their home] such that the amount of the actual loan was justified by the value of [their home] and that the payments towards this loan would be reasonable based upon [the Harts'] reported household income." Doc. 1-2, p. 9 of 14, ¶ 50. The Harts do not allege a preexisting agreement that conformed to the terms of the proposed reformation, nor do they allege mutual mistake.

Neither does Count V state sufficient facts to state a claim for reformation based on fraud. Rule 9 requires circumstances constituting fraud to be plead with particularity. But this Count provides no particulars such as the time, place and contents of the representations, or the identity of the person making any such representations.

Therefore, the Complaint fails to state a claim for reformation and Count V is dismissed.

### F.     Count VI: Breach of Implied Covenant of Good Faith and Fair Dealing

The Harts allege that Wells Fargo breached the implied covenant of good faith and fair dealing in the modification of the loan on their home, by misleading them into believing their home was sufficient collateral for the loan and that, based upon their credit score and reported household income, they would be able to afford the monthly payments. The Harts further allege that Wells Fargo used a false or inflated appraisal "to legitimize an overvaluation of the [home] and its approval of a loan in excess of the [home's] value." Doc. 1-2, p. 10 of 14.

Missouri law recognizes an implied covenant of good faith and fair dealing in every contract. *Arbos v. Jefferson Bank & Trust Co., Inc.*, 464 S.W.3d 177, 185 (Mo. 2015) (en banc). The covenant's purpose is to prevent one party from using an agreement's "express terms" to "deny the other party the expected benefit of the contract" or to "evade the spirit of the transaction." *Hawthorn Bank and Hawthorn Real Estate, LLC v. F.A.L. Invest, LLC*, 449 S.W.3d 61, 66-67 (Mo. Ct. App. 2014) (internal quotation marks omitted).

10

Count VI fails to state a claim upon which relief may be granted for at least two reasons. First, the pleadings refer to activities or negotiations that took place in advance of the loan: the allegedly false or inflated appraisal, and Wells Fargo's misleading the Harts into thinking they could afford to make monthly payments on the loan and had sufficient collateral. But the implied covenant of good faith and fair dealing relates to express terms of a contract, not activities that took place prior to execution of a contract. The covenant is not "an ever flowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to obligations not otherwise contained in a contract's express terms." *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (quoting *Glass v. Mancuso*, 444 S.W.2d 467, 478 (Mo. 1969)). *See also Koger v. Hartford Life Ins., Co.,* 28 S.W.3d 405, 412 (Mo. Ct. App. 2000) (the covenant arises pursuant to contract and is in fact a "contract remedy"). The claim also fails because the Harts do not plead sufficient factual allegations to provide the grounds on which such a claim could rest, such as allegations relating to the relevant, express terms of a contract.

Accordingly, Count VI is dismissed.

### III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, Doc. 12, is granted.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 11, 2016  
Jefferson City, Missouri